ROSENBAUM, Circuit Judge,
joined by WILSON, MARTIN, and JORDAN, Circuit Judges, dissenting:
Today the Court holds that Sentencing Guidelines error that does not cause the imposition of a sentence greater than the statutory maximum can never be cognizable under § 2255 unless a prior conviction on which an enhancement is based is vacated or the petitioner is actually innocent of the crime for which he was sentenced. The reason for this, the Court explains, is that all sentences based on errors under the Sentencing Guidelines but still lower than the statutory maximum are necessarily “lawful,” and “lawful” sentences are not cognizable under § 2255. But the notion that “lawful” sentences cannot be challenged on a § 2255 petition is not supported by United States v. Addonizio, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), the case on which the Court relies for the proposition, and is undermined by the statute’s own text.
Moreover, Johnson v. United States, 544 U.S. 295, 125 S.Ct. 1571, 161 L.Ed.2d 542 (2005) — a case where the Supreme Court implicitly recognized the cognizability under § 2255 of challenges to “lawful” sentences arising out of enhancements based on legal nullities — requires us to grant Spencer’s petition and remand his case for resentencing. Nor can the Court’s reason *1165 ing for why Johnson does not control the outcome in this case withstand scrutiny. Because I believe that Johnson alone requires the granting of Spencer’s petition and the remand of this case, I write separately.
I. Addonizio does not hold that “lawful” sentences can never constitute a fundamental defect that results in a complete miscarriage of justice under § 2255.
Congress has set forth five categories of cognizable § 2255 claims: those where (1) “the sentence was imposed in violation of the Constitution or [(2)] laws of the United States, ... [(3)] the court was without jurisdiction to impose such a sentence, ... [(4)] the sentence was in excess of the maximum authorized by law, or [(5)] [the sentence] is otherwise subject to collateral attack.” 28 U.S.C. § 2255(a). Today the Majority holds that, unless a prisoner proves actual innocence or, after being sentenced, obtains vacatur of a predicate, felony used to enhance his guidelines range, claims alleging only Sentencing Guidelines error can never be cognizable if the resulting sentence is “lawful,” a term that the Court apparently defines as a sentence below the statutory maximum. See swpra at 1138. Necessarily, then, the Majority also must have concluded that “lawful” sentences that do not meet the two narrow exceptions and that nevertheless erroneously apply the Sentencing Guidelines can never fall within any of the five categories explicitly authorized by the statute.
The Court takes the term “lawful” from United States v. Addonizio, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), which it suggests stands for the proposition that “lawful” sentences do not result in a complete miscarriage of justice. See supra at 1140 (citing Addonizio, 442 U.S. at 186-87, 99 S.Ct. at 2241, for support for the proposition that “[w]e lack the authority to provide Spencer relief. Even if he is not a career offender, his sentence is lawful.”); see also id. at 1138-39.
I respectfully disagree that Addonizio holds or otherwise requires the conclusion that so-called “lawful” sentences necessarily do not result in a “complete miscarriage of justice” and that they can never be cognizable on a § 2255 petition. Instead, Addonizio holds only that a lawful sentence that is imposed because of a judge’s incorrect subjective expectation of the actual amount of time that a defendant will serve in prison under the judge’s sentence — and only from a sentencing judge’s frustrated subjective intent — does not result in a complete miscarriage of justice and is not cognizable under § 2255.
In Addonizio, the district judge sentenced Addonizio to ten years’ imprisonment with the expectation that Addonizio would be eligible for parole after he had served a third of his sentence. 442 U.S. at 180-81, 99 S.Ct. at 2238. Not long after Addonizio was sentenced, however, the Parole Commission significantly changed its policies, and based on the new policies, twice refused Addonizio parole. Id. at 182, 99 S.Ct. at 2238-39. Addonizio then filed a petition under § 2255 to challenge his sentence. Id. at 183, 99 S.Ct. at 2239.
The Supreme Court determined that Addonizio’s claim was not cognizable under § 2255 because “there is no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge.” Id. at 187, 99 S.Ct. at 2241 (emphasis added). In reaching this conclusion, the Supreme Court emphasized the practical difficulties of allowing the alleged frustration of the subjective expectations of the sentencing judge to govern the cognizability of a claim under § 2255:
As a practical matter, the subjective intent of the sentencing judge would pro *1166 vide a questionable basis for testing the validity of his judgment. The record made when Judge Barlow pronounced sentence against Addonizio, for example, is entirely consistent with the view that the judge then thought that this was an exceptional case in which the severity of Addonizio’s offense should and would be considered carefully by the Parole Commission when Addonizio became eligible for parole. If the record is ambiguous, and if a § 2255 motion is not filed until years later, it will often be difficult to reconstruct with any certainty the subjective intent of the judge at the time of sentencing. Regular attempts to do so may well increase the risk of inconsistent treatment of defendants; on the other hand, the implementation of the Parole Commission’s policies may reduce that risk.
Id. at 187-88, 99 S.Ct. at 2242. Thus, Addonizio’s holding is grounded in significant part on the Supreme Court’s distinction between “objectively ascertainable error” and “the frustration of the subjective intent of the sentencing judge.”[1]
It is true, as the Court suggests, see supra at 1138, that in Addonizio, the Supreme Court stated, “According to all of the objective criteria — federal jurisdiction, the Constitution, and federal law — the sentence was and is a lawful one.” Addonizio, 442 U.S. at 187, 99 S.Ct. at 2241. But that sentence cannot be read in isolation. In context, the statement takes on its intended meaning:
According to all of the objective criteria — federal jurisdiction, the Constitution, and federal law — the sentence was and is a lawful one. And in our judgment, there is no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge.
Id. (Emphasis added).
The first quoted sentence refers to the specifically identified categories of matters cognizable under the express language of § 2255 — sentences where the court lacked jurisdiction, violated the Constitution, or transgressed federal law — thus making the sentences “unlawful.” Under § 2255, however, a sentence may be vacated not only if “the sentence was imposed in violation of the Constitution or laws of the United States, or ... the court was without jurisdiction to impose such sentence, or ... the sentence was in excess of the maximum authorized by law ...,” but also if the sentence “is otherwise subject to collateral attack....” 28 U.S.C. § 2255(a).
The first quoted sentence, therefore, does no more than state that Addonizio’s sentence was a “lawful” one by definition 'because it did not fall into any of the expressly named categories. It does not in any way suggest that all “lawful” sentences — which, under Addonizio, appear to be all sentences that do not fall into one of the first four categories expressly enumerated under § 2255 — can never be cognizable under § 2255. If it did, it would necessarily cause the phrase “otherwise subject to collateral attack,” which appears in § 2255, to be meaningless, violating the “elementary canon of construction that a statute should be interpreted so as not to render one part inoperative.... ” Mountain States Tel. Co. v. Pueblo of Santa Ana, 472 U.S. 237, 249, 105 S.Ct. 2587, 2594, 86 L.Ed.2d 168 (1985) (citation and internal quotation marks omitted).
Significantly, the second quoted sentence begins by design with the conjunc *1167 tion “[a]nd,” clearly signaling that the thought contained within it is part and parcel of the thought set forth in the sentence preceding it. See Addonizio, 442 U.S. at 187, 99 S.Ct. at 2241. And it explains that a lawful sentence challenged on a subjective basis only — not on an objectively ascertainable standard such as is at issue in Spencer’s case — does not qualify as “otherwise subject to collateral attack” under § 2255. The second sentence — and, in particular, both sentences read together, as they were written — says only that. Entirely absent from the quoted sentences, as it must be to avoid neutering a part of § 2255, is any suggestion that a “lawful” sentence can never qualify as “otherwise subject to collateral attack” under § 2255. Indeed, in light of the four other enumerated categories, the “otherwise subject to collateral attack” category is necessary only to the extent that Congress intended to provide prisoners with otherwise “lawful” sentences an opportunity to attack them.
II. The Supreme Court’s decision in Johnson, which implicitly found that an otherwise “lawful” sentence that was enhanced based on a legal nullity was cognizable under § 2255, controls the outcome of Spencer’s case and requires granting Spencer’s petition and remanding for resentencing.
A. Necessarily, Johnson implicitly holds that an otherwise “lawful” sentence that was enhanced based on a legal nullity is cognizable under the “otherwise subject to collateral attack” category of § 2255 because it is a “fundamental defect that results in a complete miscarriage of justice.”
In Johnson, Johnson was sentenced as a career offender under § 4B1.1 of the Sentencing Guidelines. 544 U.S. at 298, 125 S.Ct. at 1575. On appeal, we affirmed the sentence. Id. at 299, 125 S.Ct. at 1575 (citing United States v. Johnson, No. 94-9402, 73 F.3d 1108 (Dec. 22, 1995) (per curiam)).
More than two years after we issued our opinion in Johnson’s direct appeal, Johnson sought in state court to have a guilty plea in one of his predicate offenses invalidated “because he had not knowingly, intelligently, and voluntarily waived his right to counsel.” Id. at 300, 125 S.Ct. at 1576. Although the state denied Johnson’s contentions, it did not file hearing transcripts. Id. at 301, 125 S.Ct. at 1576. Based on the only records that were in fact filed, the state court concluded that the state “did not show an affirmative waiver of [Johnson’s] right to an attorney,” so it vacated the predicate conviction. Id. (alteration in original) (internal quotation marks omitted). ’
About three months later, Johnson filed a petition under § 2255 seeking to vacate his federal sentence based on the state’s vacatur of one of the predicate offenses used to establish career-offender status. Id. The district court denied the motion as untimely, and once again, we affirmed. Id. at 301, 125 S.Ct. at 1577.
The Supreme Court granted certiorari “to resolve a disagreement among the Courts of Appeals as to whether vacatur of a prior state conviction used to enhance a federal sentence [is a matter of fact for purposes of [determining under § 2255(f)(4) ] “the date on which the facts supporting the [§ 2255] claim or claims presented could have been discovered through the exercise of due diligence”],” and, if so, when the one-year limitation period begins to run where vacatur of a predicate offense occurs. Id. at 302, 125 S.Ct. at 1577. Although the Court decided that vacatur of an underlying conviction does qualify as a “fact” for purposes of triggering the start of the one-year *1168 statutory period under § 2255(f)(4), it nonetheless affirmed our decision denying Johnson’s petition because it found that Johnson had failed to demonstrate due diligence in seeking the order of vacatur. Id.
The Johnson dissent took issue only with the Court’s determination of when the one-year limitation period should begin when vacatur of a predicate offense occurs. See id. at 312-19, 125 S.Ct. at 1582-87 (Kennedy, J., dissenting).
Neither the Supreme Court’s opinion nor the dissent in Johnson suggests that Johnson’s claim of objectively discernible Sentencing Guidelines error based on alleged erroneous application of the career-offender guideline is not cognizable under § 2255. To the contrary, both opinions strongly imply — indeed, necessarily implicitly find — that it is.[2] Moreover, this Court agrees that Johnson stands for the proposition that “[a] prisoner might ... collaterally attack a sentence enhanced by a prior conviction if that prior conviction has since been vacated[ ],” and that such a petition raises “sentencing error[]” as its basis. See supra at 1138 (“But the Supreme Court has rejected collateral attacks of other sentencing errors....”) (emphasis added).
So, although Johnson’s original sentence was necessarily “lawful” under the Majority’s reasoning, the Supreme Court nonetheless found Johnson’s claim cognizable under § 2255. It could have done so only if Johnson’s sentence was “otherwise subject to collateral attack” under § 2255.
This is necessarily so since Johnson’s sentence was not cognizable under any of the four other categories set forth in § 2255. That is, Johnson’s sentence did not violate the Constitution, was not imposed by a court that lacked jurisdiction, *1169 and was not in excess of the statutory-maximum; nor did the sentence violate the “laws of the United States” since, according to today’s Majority, the Sentencing Guidelines, even when mandatory, are not “laws of the United States.” See supra at 1141 (“[A]ll of the guidelines are the result of a congressional directive — the Sentencing Reform Act of 1984 — but none is tantamount to the laws of Congress”). Although I need not opine here on whether the Sentencing Guidelines are or ever were “laws of the United States” for § 2255 purposes, the fact that the Majority takes this position necessarily means that, under the Majority’s reasoning, Johnson’s sentence was “lawful.” Therefore, Johnson’s claim could have been cognizable only under the “otherwise subject to collateral attack” portion of § 2255. The circumstance that made Johnson’s sentence “otherwise subject to collateral attack” and allowed Johnson to breach the § 2255 barrier in spite of his “lawful” sentence was the fact that the predicate felony on which his enhanced sentence had been based had been vacated — that is, it was a legal nullity at the time of Johnson’s § 2255 petition.
In short, Supreme Court precedent renders a challenge to the application of the career-offender guideline cognizable under § 2255 when one of the underlying predicate convictions on which it is based is effectively a nullity and that circumstance is timely identified. That is precisely the situation that exists in this case.
B. Spencer’s enhanced sentence is based on a legal nullity like Johnson’s was, so it qualifies under Johnson as “a complete miscarriage of justice” and is cognizable as “otherwise subject to collateral attack” under § 2255 to the same extent as Johnson’s sentence was in Johnson:
Turning to the record before us, it is clear that, as in Johnson, one of the predicate felonies upon which Spencer’s career-offender status was based is effectively a legal nullity. Consequently, Spencer has a cognizable claim under § 2255.
Section 4131.2(a) of the United States Sentencing Guidelines Manual (“U.S.S.G.”) defines “crime of violence” in part as “any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that — ... (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.” In this case, the district court concluded that third-degree felony child abuse “equate[s] with a crime of violence,” or, in other words, that it qualifies as a “crime of violence” under the residual clause of Section 4B1.2(a)(2). This clause provides that the crime must “otherwise involve[] conduct that presents a serious potential risk of physical injury to another.” U.S.S.G. § 4B1.2(a)(2) (emphasis added). The district court reasoned that “any conviction of Florida Statute 827.03, a third-degree felony, has the underlying elements of a crime of violence.”
But, under Florida law, the state may prove third-degree felony child abuse in two different ways. In particular, and as relevant here, Florida law makes it a third-degree felony for any person to “knowingly or willfully [engage in “[a]n intentional act that could reasonably be expected to result in physical or mental injury to a child”] without causing great bodily harm, permanent disability, or permanent disfigurement to the child.” Fla. Stat. §§ 827.03(2)(c), 827.03(a)(b)(2) (emphasis added). Therefore, a person may be convicted of this crime if he performs an act that could reasonably be expected to result in only mental injury or if he does *1170 something that could reasonably be expected to result in only physical injury or, finally, if he commits an act that could reasonably be expected to result in both physical and mental injury.
Obviously, and by definition, if a person is convicted of engaging in an act that could reasonably be expected to result in mental injury only, that is not a crime that “involves conduct that pres'ents a serious potential risk of physical injury to another” under § 4B1.2(a)(2) (emphasis added). As a result, it cannot qualify as a predicate offense under the career-offender guideline. On the other hand/ if a person is convicted of acting in a way that could reasonably be expected to result in either physical injury only or in both mental and physical injury, that person necessarily engages in “conduct that presents a serious potential risk of physical injury to another” under § 4B1.2(a)(2). Because one version of third-degree felony child abuse . qualifies as a “crime of violence” and another does not, it was incumbent on the district court to determine to which version of the statute Spencer pled guilty. See Johnson v. United States, 559 U.S. 133, 144, 130 S.Ct. 1265, 1273, 176 L.Ed.2d 1 (2010)[3] (citing Nijhawan v. Holder, 557 U.S. 29, 40-41, 129 S.Ct. 2294, 2302, 174 L.Ed.2d 22 (2009); Chambers v. United States, 555 U.S. 122, 126-27, 129 S.Ct. 687, 691, 172 L.Ed.2d 484 (2009); Shepard v. United States, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005) (plurality opinion); Taylor v. United States, 495 U.S. 575, 602, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990)).
This the district court never did. Instead, the court apparently did not recognize that more than one version of § 827.03 exists, so it did not ascertain to which version of third-degree felony child abuse Spencer had pled guilty. The judge simply concluded, “I think [Spencer’s prior conviction] comes within [Fla. Stat. § ] 827.03(b), an intentional act that could reasonably be expected to result in physical or mental injury to a child.” (Emphasis added).
It is nonetheless clear in looking at the sentencing record before the district court that no sufficient basis existed to conclude that Spencer pled guilty to the version of third-degree felony child abuse that requires an act that could reasonably be expected to result in physical injury. In Shepard, 544 U.S. at 16, 125 S.Ct. at 1257, the Supreme Court explained that a sentencing court generally may consider only “the statutory definition [of the crime], charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented” (i.e., the “Shepard documents”) when determining *1171 to what crime a defendant previously pled guilty for purposes of assessing whether the crime qualifies as a “violent felony” under the ACCA.
The reason for this limitation is simple: the Sixth and Fourteenth Amendments guarantee that, with the exception of the existence of a prior felony conviction, any findings of fact that will be used to increase a statutory mandatory minimum or maximum term of imprisonment — such as a determination that a person has sufficient predicate offenses under the ACCA — must be submitted to and found by a jury beyond a reasonable doubt. Id. at 25, 125 S.Ct. at 1262 (plurality opinion); see also Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S.Ct. 2348, 2262-63, 147 L.Ed.2d 435 (2000); Alleyne v. United States, — U.S. -, 133 S.Ct. 2151, 2155, 186 L.Ed.2d 314 (2013). Going beyond the Shepard documents would generally require a sentencing judge to “make a disputed finding of fact about what the defendant and state judge must have understood as the factual basis of the prior plea ...,” Shepard, 544 U.S. at 25, 125 S.Ct. at 1262 (plurality opinion), a practice that would violate the constitutional prohibition against allowing facts not submitted to a jury and proven beyond a reasonable doubt to increase the mandatory minimum and statutory maximum. Therefore, the Supreme Court has further explained, “[W]hen a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense’s elements; whatever he says, or fails to say, about superfluous facts cannot license a later sentencing court to impose extra punishment.” Descamps v. United States, — U.S. -, 133 S.Ct. 2276, 2288 (citing Shepard, 544 U.S. at 24-26, 125 S.Ct. 1254 (plurality opinion)). As a result, it is not constitutionally permissible in considering whether a defendant qualifies for sentencing enhancement under the ACCA for a sentencing judge to make any factual findings about the conviction that the defendant did not knowingly, voluntarily, and intelligently waive his right to submit to a jury to be proven beyond a reasonable doubt.
It is true that Spencer’s sentence was enhanced under the career-offender guideline, not the ACCA, and the same Sixth Amendment concerns do not exist with respect to the guideline because application of the career-offender enhancement cannot increase a mandatory minimum or statutory maximum term of imprisonment.[4] But we have previously concluded that our determinations about whether a conviction constitutes a “violent felony” under the ACCA apply to the analysis of whether an offense qualifies as a “crime of violence” under the Sentencing Guidelines.[5] United States v. Chitwood, 676 F.3d 971, 975 n. 2 (11th Cir.2012) (citing United States v. Archer, 531 F.3d 1347, 1350 n. 1 (11th Cir.2008)). And I am aware of no case that has suggested that courts should apply different standards *1172 under the career-offender guideline and the ACCA for assessing to what particular predicate crime a defendant pled guilty. On the contrary, we ourselves have recently applied the Shepard — analysis procedures to determine whether a prior conviction under a divisible statute qualified as a predicate crime for purposes of a different guideline enhancement. See United States v. Estrella, 758 F.3d 1239, 1248-54 (11th Cir.2014) (applying Shepard analysis procedure to case involving enhancement under U.S.S.G. § 2L1.2). For these reasons,[6] I consider only the Shepard documents in identifying the version of third-degree felony child abuse to which Spencer pled guilty.
The record contains no charging document for the predicate crime to which Spencer pled guilty, and the only Shepard document referred to during the sentencing proceeding was the transcript of Spencer’s hearing where he pled guilty to Section 827.03(2)(e). But the entire transcript is not a part of the sentencing record. Instead, the sole statement from the transcript that appears in the sentencing record is the state-court prosecutor’s factual basis for the conviction. In its entirety, it reads, “As to [Spencer], ... he did engage in sexual activity with a minor and that action could reasonably cause physical or mental injury to that child, contrary to the provisions of 827.03.”[7] (Emphasis added).
This statement sheds no light on to which version of the statute Spencer pled guilty — the version where the act could reasonably cause physical injury, or the version where the act could reasonably cause only mental injury. While it is true that many types of sexual activity could reasonably cause physical injury to a child, not all sexual activity necessarily could reasonably cause physical injury to a child, particularly because, for purposes of Section 827.03, Fla. Stat. § 827.01(2) defines the term “child” to include anyone up to, though not including, the age of eighteen. So this statement by the prosecutor does not demonstrate that Spencer necessarily must have pled to the physical-injury version of the statute.[8]
*1173 Nor does the record contain any indication that Spencer himself understood that he was pleading to the version of the statute requiring that he have knowingly participated in activity with a child that could reasonably cause physical injury. In fact, during the sentencing hearing, Spencer argued that he had not pled guilty to the physical-injury version of the statute before the state court. Based on the record, it cannot be said that when Spencer pled guilty to violating Fla. Stat. § 827.08, Spencer knowingly, voluntarily, and intelligently gave up his Sixth Amendment right to have submitted to a jury and proven beyond a reasonable doubt the element of the qualifying version of the statute that he engaged in activity that could reasonably cause physical injury to a child. As a result, Spencer’s conviction for third-degree felony child abuse cannot be viewed as a conviction for the physical-injury version of the statute. Even the Government concedes this point. Quite simply, Spencer’s conviction for third-degree felony child abuse never qualified as a “crime of violence” at any point.
This situation differs from when a court mistakenly concludes that a particular crime or version of a crime constitutes a “crime of violence,” but later Supreme Court jurisprudence makes clear that that same crime, in fact, is not a crime of violence. See, e.g., United States v. Archer, 531 F.3d 1347 (11th Cir.2008). We have previously described a petitioner in such a case as being “legally innocent” of the predicate crime of conviction. See McKay v. United States, 657 F.3d 1190, 1199 (11th Cir.2011). In those circumstances, identifying the particular crime that the petitioner was convicted of is not the question; that is beyond dispute throughout all stages of the legal proceedings. Instead, the only question concerns whether the particular crime at issue is properly classified as a “crime of violence.”
Here, however, the opposite situation exists: we know and have always known that the mental-injury version of the statute is not a “crime of violence,” and we know and have always known that the physical-injury version of the statute is. But the sentencing court did not identify which version of the crime was the subject of Spencer’s conviction. Had it done so, it would have determined that no Shepard information shows that Spencer knowingly, voluntarily, and intelligently waived his Sixth Amendment right to have the physical-injury version of the statute submitted to a jury and proven beyond a reasonable doubt. So the sentencing court could not properly have relied on a conviction of the *1174 physical-injury version of the statute in determining whether Spencer qualified as a career offender. Put simply, in Spencer’s case, no amount of clarification by the Supreme Court of the phrase “crime of violence” could affect whether Spencer’s predicate conviction was a conviction for a crime of violence; that is, the record lacks evidence that Spencer ever pled guilty to the physical-injury version of the statute which is the only version of the statute that could ever have been viewed as a crime of violence. For this reason, a conviction for the only version of third-degree felony child abuse that qualifies as a crime of violence — the physicabinjury version— never occurred in the first place. In other words, it is effectively a legal nullity.
For purposes of cognizability under § 2255, to the extent that it is any different for the sentencing court to have relied on Spencer’s non-existent conviction for the physical-injury version of third-degree felony child abuse in affirming his career-offender status than it is for a sentencing court to base career-offender status on a subsequently vacated conviction as in Johnson, Spencer’s case presents even more of a problem if left unaddressed. Unlike Johnson, who was at least convicted of the predicate offense at some point, Spencer never was. Because Spencer’s alleged predicate conviction, like Johnson’s vacated predicate conviction, is effectively a legal nullity, Spencer’s § 2255 petition is cognizable to the same extent as was Johnson’s.
C. The Majority’s reasoning for why Johnson does not require us to grant Spencer’s petition and remand for resentencing does not withstand scrutiny.
The Majority, though, resists this natural conclusion, offering three reasons. First, the Majority explains, “Spencer’s prior conviction has not been vacated, and that distinction matters. When a conviction is vacated, that vacatur constitutes a ‘new “fact” ’ with which the petitioner can challenge his sentence.” Supra at 1143 (citing Stewart v. United States, 646 F.3d 856, 858 (11th Cir.2011) (emphasis in original)). Second, the Majority posits, “Even if we were to agree with Spencer that he is ‘innocent’ as a career offender, that legal innocence falls far short of factual innocence, the kind of innocence involved in Johnson....” See id. at 1142 (emphasis in original). And third, the Majority suggests that Spencer is not entitled to application of the same § 2255 cognizability rule as Johnson because, supposedly unlike with Johnson, “[i]f the district court were to resentence Spencer, the district court could impose the same sentence again.” See id. at 1140-41. None of these reasons can withstand scrutiny.
1.
The Majority is correct in recognizing that “[wjhen a conviction is vacated, that vacatur constitutes a ‘new “fact” ’ with which the petitioner can challenge his sentence.” Supra at 1143 (emphasis omitted). But this legal truth is irrelevant to the issue of cognizability under § 2255. Instead, it relates only to the separate and independent issue of whether a § 2255 application has been timely filed within the statute of limitations — a requirement that is not at issue here because it is beyond all doubt that Spencer timely filed his § 2255 application.
In Stewart, the case that the Majority quotes and relies upon in trying to distinguish the vacatur of a predicate conviction from the reliance from the outset on a nonexistent conviction, we explained that “the state court vacatur of a predicate conviction is a new ‘fact’ that triggers a fresh one-year statute of limitations under *1175 § 2255(f)(4),[ ] so long as the petitioner exercised due diligence in seeking that order.” Section 2255(f), however, is the statute-of-limitations provision in § 2255; it has nothing to do with cognizability under § 2255, which is governed by § 2255(a). Section 2255(f), provides, in relevant part,
A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of—
(1) the date on which the judgment of conviction becomes final;
(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.
28 U.S.C. § 2255(f).
Stewart’s claim was timely under § 2255(f)(4) of the statute of limitations and Johnson’s was not because Stewart filed his § 2255 petition within one year of the vacatur of his underlying predicate conviction, which, in turn, Stewart pursued with due diligence, while Johnson did not. Spencer, however, does not need to rely on § 2255(f)(4) of the statute of limitations because his claim is timely under § 2255(f)(1), since he filed his § 2255 petition within one year of the date on which the judgment of his conviction became final. Thus, Spencer and Stewart each complied with the statute of limitations applicable to his claim, so each filed a timely petition, and, provided that each man satisfied the separate cognizability requirement under § 2255(a) — which, for the reasons discussed elsewhere in this dissent, Spencer did — Spencer’s and Stewart’s petitions were equally renewable under § 2255(f), regardless of whether Spencer’s case involved a new “fact” for purposes of § 2255(f)(4).
Johnson, on the other hand, did not file a timely petition because he did not file his petition within one year of when, with due diligence, he could have obtained vacatur of his predicate conviction. Perhaps ironically, that makes Spencer’s claim more appropriate for review under § 2255 than Johnson’s, which the Supreme Court implicitly found cognizable (though not timely). In any case, the mere fact that Johnson’s and Stewart’s claims sought to satisfy the statute of limitations set forth at § 2255(f)(4) while Spencer met the statute of limitations set forth at § 2255(f)(1) does not somehow make Spencer’s cognizable claim not cognizable. Section 2255(f) has nothing to do with cognizability-
2.
Second, the Majority confuses the concepts of “actual innocence,” “factual innocence,” and “legal innocence.” In this regard, the Majority notes, “Actual innocence means factual innocence, not mere legal insufficiency.” Supra at 1143 (emphasis in original) (quoting McKay v. United States, 657 F.3d 1190, 1199 (11th Cir.2011)). As the Supreme Court has explained, “actual innocence” means that the petitioner is actually innocent of the crime of conviction. Bousley v. United States, 523 U.S. 614, 623-24, 118 S.Ct. 1604, 1611-12, 140 L.Ed.2d 828 (1998). That is, as a matter of fact, he did not commit the crime of conviction. See id. Therefore, “[t]o establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him.” Id. at 623, 118 S.Ct. at 1611 (citations and internal quotation marks omitted).
This standard, of course, does not describe Johnson’s situation. Johnson’s predicate conviction was set aside only be *1176 cause, years after his conviction, the state could not locate the hearing transcripts that showed that he had waived the right to counsel, not because Johnson presented evidence showing that he had not committed the crime.
The term “actual innocence” has also been used in the context of death-penalty sentences. In Sawyer v. Whitley, 505 U.S. 333, 112 S.Ct. 2514, 120 L.Ed.2d 269 (1992), the Supreme Court considered whether a petitioner could be “actually innocent” of the death penalty. To be “actually innocent” of a death-penalty sentence, a petitioner must present evidence showing “a fair probability that a rational trier of fact would have entertained a reasonable doubt as to the existence of those facts that are prerequisites under state or federal law for the imposition of the death penalty.” Id. at 346, 112 S.Ct. at 2523 (citation and internal quotation marks omitted).
If the Majority is not suggesting that Johnson was “actually innocent” of his vacated predicate crime, which it cannot be since he wasn’t, it appears that the Majority may be attempting to apply the concept of actual innocence of a death-penalty sentence (as opposed to actual innocence of the crime of conviction underlying the death-penalty sentence) to the non-death-penalty sentencing realm. The Majority, then, appears to be suggesting that Johnson was “actually innocent” of the career-offender enhancement because, as a matter of fact, the underlying predicate conviction no longer existed.
In McKay, we declined to determine whethér the concept of actual innocence of a sentence can apply outside the death-penalty context.[9] Instead, we concluded that we did not need to reach that issue. 657 F.3d at 1199. As we explained, even though one of the predicate crimes on which McKay’s career-offender enhancement depended had been reclassified as not qualifying as a predicate “crime of violence” after McKay’s sentencing, McKay could not show “actual innocence” in the sentencing context since McKay’s conviction for the predicate crime still remained. Id. In other words, he was only “legally innocent” of the predicate crime, not actually innocent. Id.
Since Johnson was.not actually innocent of the predicate crime itself, today the Court appears necessarily to implicitly reach the conclusion that Johnson’s claim was cognizable under § 2255 because he was actually innocent of the career-offender sentence since the underlying predicate conviction had ceased to exist. Like Johnson after his predicate conviction was vacated, Spencer lacks the second predicate conviction on which his sentence was based. But unlike Johnson, whose conviction existed at the time of sentencing, Spencer never had a conviction for a second predicate crime that ever qualified as such. That renders Spencer at least as “actually innocent” of the predicate crime as Johnson was of his when the Supreme court implicitly found his claim to be cognizable under § 2255.[10] Nor is this a sitúa *1177 tion where Spencer could be fairly described as being only “legally innocent” since Spencer was never convicted of the only version of third-degree felony child abuse that ever qualified as a “crime of violence.”
But, unlike Johnson, Spencer timely filed his § 2255 petition and raised this issue at both his sentencing and on direct appeal. Therefore, under Johnson’s reasoning, Spencer is entitled to -have his § 2255 petition granted.
3.
The Majority’s third reason for not applying Johnson appears to be its suggestion that, supposedly unlike with Johnson, a “resentencing court could reimpose the same sentence ...” on Spencer. See supra at 1143; see also id. at 1140-41 (“If the district court were to resentence Spencer, the district court could impose the same sentence again.”). But the fact that a sentencing court could reimpose the same sentence on Spencer does not in any way distinguish Spencer’s situation from Johnson’s.
' Although Spencer was sentenced under the advisory guidelines and Johnson under the mandatory guidelines, a resentencing court still could have reimposed the same sentence that Johnson initially received through the use of departures, which might have been especially relevant in Johnson’s mandatory-guidelines case since Johnson had obtained vacatur of seven prior convictions over a ten-year period where he had previously pled guilty but the state was unable to produce transcripts showing that Johnson had knowingly and intelligently waived his right to counsel — that is, the state court entered vacatur in all seven prior felony cases for reasons of legal insufficiency, not actual innocence. See Johnson, 544 U.S. at 300-01, 125 S.Ct. at 1576.
Under the mandatory guidelines framework, § 5111.8, p.s.,[11] provided, “A defendant’s criminal history is relevant in determining the applicable criminal history category.” U.S.S.G. § 5111.8, p.s. The section then referred to § 4A1.3, p.s., id., which provided in relevant part,
Departures Based on Inadequacy of Criminal History Category (Policy Statement)
(a) UPWARD DEPARTURES
(1) STANDARD FOR UPWARD DEPARTURE. — If reliable information indicates that the defendant’s criminal history category substantially under-represents the seriousness of the defendant’s criminal history or the likelihood that the defendant will commit other crimes, an upward departure may be warranted.

Id.

As a result, just as the Majority points out that the “sentencing judge would consider [Spencer’s] prior conviction for felony child abuse anew during resentencing,” supra at 1143, so too could the sentencing judge consider Johnson’s guilty plea for the vacated predicate conviction (along with his six other vacated guilty pleas) anew in Johnson’s case, if the sentencing judge determined that the pleas constituted “reliable information.” Indeed, there are several departures that the sentencing judge could have considered when resentencing Johnson. See, e.g., U.S.S.G. § 5K2.0, p.s. (“Grounds For Departure”).
*1178 But attempting to divine any sentence imposed on resentencing in both Spencer’s and Johnson’s cases constitutes pure speculation and certainly provides no objectively ascertainable basis for distinguishing Johnson from Spencer’s case. The point is simply that in either case, and contrary to the Majority’s suggestion, Johnson and Spencer each could have had the same sentence reimposed. Therefore, on this ground, there is no logical basis for the proposition that the Sentencing Guidelines error in Johnson constituted a “fundamental defect that resulted in a complete miscarriage of justice,” while the error in Spencer’s case does not. Therefore, I would hold that Sentencing Guidelines error that was based upon what amounts to effectively an objectively ascertainable legal nullity creates a cognizable claim under § 2255 because such errors constitute a “fundamental defect that result in a complete miscarriage of justice.”
III. Under the circumstances of this case, Spencer’s valid claim of a fundamental defect that results in a complete miscarriage of justice is not barred because he raised it on direct appeal and we incorrectly rejected it.
Despite the obvious merit to Spencer’s claim, some might suggest that Spencer’s claim is procedurally barred because he raised the issue on direct appeal and we rejected it at that time. See Stoufflet v. United States, 757 F.3d 1236, 1239 (11th Cir.2014). While at least one court has described this procedural bar as the “law-of-the-case doctrine,” see, e.g., White v. United States, 371 F.3d 900, 902 (7th Cir.2004) (“Relitigation is forbidden (subject to exceptions built into the law of the case doctrine ...) even if it is the first collateral attack.”), this Court recently rejected that characterization.[12] See Stoufflet, 757 F.3d at 1239-43.
In explaining why, this Court reasoned that
Congress and the courts have imposed far greater limitations on collateral attacks than the limitations imposed by the law-of-the-case doctrine and its exceptions .... For example, new evidence, by itself, is not a ground for relief in a motion to vacate unless that new evidence establishes an error of constitutional proportions or a “fundamental defect which inherently results in a complete miscarriage of justice.”
Id. at 1240 (citations omitted) (emphasis added). We similarly noted that an intervening change in the law will not warrant relief on collateral review unless that change in the law rendered our earlier ruling “incorrect as a matter of constitutional law or a complete miscarriage of justice.” Id. at 1242 (emphasis added). And, particularly significant to Spencer’s case, we stated, “[A] court of appeals reviewing a motion to vacate will not disturb a prior decision — even if so clearly erroneous that it results in manifest injustice — if that decision did not result in a constitutional error or a complete miscarriage of justice.” Id. at 1241 (emphasis added).
*1179 To determine whether Stoufflet’s argument allowed him to escape the procedural bar to raising the same issue in § 2255 proceedings as we rejected on Stoufflet’s direct appeal, we then considered whether Stoufflet’s claim in his .§ 2255 petition qualified under the particular “limitation[ ] on collateral attacks” that Stoufflet proposed was applicable-that a change in the law caused our earlier ruling to be “incorrect as a matter of constitutional law or a complete miscarriage of justice.” See id. at 1242. We concluded that it did not. Id.
But the point is that we evaluated whether the procedural bar to raising an issue previously raised on direct appeal applied in Stoufflet’s case by the standards of cognizability under § 2255. This makes perfect sense because procedurally barring claims that are cognizable under § 2255 would impermissibly elevate court-made doctrine, developed for the purpose of controlling our docket and promoting finality, above a congressionally enacted statute authorizing habeas review of claims where a complete miscarriage of justice has occurred.
Here, for all of the reasons explained earlier in this dissent, under Johnson, a “fundamental defect that results in a complete miscarriage of justice” has happened. In summary, under the Majority’s reasoning, the Supreme Court has already determined in Johnson that a sentence based on the career-offender enhancement, which, in turn, incorrectly relied on a legal nullity, is “otherwise subject to collateral attack” because it is a fundamental defect that results in a complete miscarriage of justice. Like Johnson’s sentence, Spencer’s sentence was based on the career-offender enhancement, which was wrongly applied to him because the sentencing court relied on a legal nullity to find the enhancement applicable. So, like Johnson’s sentence, Spencer’s sentence must also be a fundamental defect that results in a complete miscarriage of justice and therefore “otherwise subject to collateral attack” under § 2255. As a result, under Stoufflet, it is not subject to the procedural bar against raising the same claim that was brought on direct appeal in § 2255 proceedings.
IY. Conclusion
Finally, the Majority writes, “Our dissenting colleagues ... fail to ... provide a principled test for distinguishing between misapplications of the guidelines that can be collaterally challenged and those that cannot.” Supra at 1140 (emphasis in original). But there is no reason for this dissent to set forth a test for identifying all misapplications of the guidelines that can be collaterally challenged and distinguishing them from those that cannot because existing Supreme Court precedent already renders the misapplication of the guidelines that occurred in Spencer’s case to be cognizable.[13]
In Johnson, the Supreme Court explicitly recognized that situations besides vacatur could raise a cognizable § 2255 claim when it opined, “[TJhere may be rare cases in which no channel of review was actually available to a defendant with respect to a prior conviction, due to no fault of his own, in which case a prisoner might be able to use a motion under § 2255 to challenge the prior [“]conviction[”] as well as the federal sentence based on it.” 544 U.S. at 304 n. *1180 4, 125 S.Ct. at 1578 n. 4 (citing Daniels v. United States, 532 U.S. 374, 382, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001)) (citation and internal quotation marks omitted). This is that rare case.
Spencer could not have had his “crime of violence” predicate conviction vacated because he was never convicted of or pled guilty to such a crime in the first place. As in Johnson, the “fact” upon which the sentencing court relied to conclude that Spencer was a career offender was effectively a legal nullity, resulting in an erroneous application of the Sentencing Guidelines. Despite Spencer’s protestations at sentencing and on direct appeal that he had not been convicted of the violent-felony version of third-degree felony child abuse, the sentencing judge erred in not identifying to which version of the predicate crime Spencer had pled guilty, and we made the same mistake on direct appeal. Now we are saying that Spencer is the one who must pay for our mistakes with what are likely years of his life. That is a “fundamental defect that results in a complete miscarriage of justice.” I would grant the petition and remand for resentencing. I therefore respectfully dissent.

. The remainder of the holding in Addonizio is based on the statutory scheme as it related at that time to the duties of the Parole Commission, and it is not relevant to Spencer's case. See id. at 188-89, 99 S.Ct. at 2242-43.

. First and perhaps most significantly, if Johnson’s claim of Sentencing Guidelines error were not cognizable on a § 2255 petition, the entirety of both the Court’s opinion and the dissent would be dicta. This is necessarily the case because it would never be necessary to determine at what point the one-year statute of limitations begins to run under § 2255 when a predicate offense supporting a career-offender enhancement is vacated if a challenge to the application of career-offender status under the Sentencing Guidelines were not cognizable on a § 2255 petition in the first place. That is, the question of timeliness could never be reached because all § 2255 petitions challenging career-offender status following vacatur of a qualifying predicate conviction would have to be denied as not cognizable.
Second, while neither opinion in Johnson explicitly states that Sentencing Guidelines career-offender error is cognizable under § 2255, both opinions make statements that are inconsistent with the conclusion that it is not. For example, the Supreme Court notes, “Our cases applying [mandatory enhancements under the Sentencing Guidelines and the Armed Career Criminal Act, 18 U.S.C. § 924(e) (“ACCA”),] assume ... that a defendant given a sentence enhanced for a prior conviction is entitled to a reduction if the earlier conviction is vacated.” Id. at 302-03, 125 S.Ct. at 1577 (emphasis added) (citations omitted). It further explains that "a defendant who successfully attacked his state conviction in state court or on federal habeas review could then 'apply for reopening of any federal sentence enhanced by the state sentences.’” Id. at 303, 125 S.Ct. at 1578 (emphasis added) (citations omitted).
And the Johnson dissent states that Custis v. United States, 511 U.S. 485, 114 S.Ct. 1732, 128 L.Ed.2d 517 (1994), and Daniels v. United States, 532 U.S. 374, 121 S.Ct. 1578, 149 L.Ed.2d 590 (2001), "suggest that the proper procedure for reducing a federal sentence enhanced on the basis of an invalid state conviction is to seek a vacatur of a state conviction, and then proceed through federal habeas.” Id. at 313, 125 S.Ct. at 1583 (Kennedy, J., dissenting). While it is true that Custis and Daniels both involved sentences enhanced under the ACCA, the Johnson dissent apparently saw no basis for distinguishing Johnson's enhancement under the career-offender provision of the Sentencing Guidelines from those of Custis and Daniels under the ACCA.

. No retroactivity concern arises because, as Johnson's citation to Shepard and Taylor demonstrates, Supreme Court decisions predating Spencer’s sentencing necessarily required this procedure. See United States v. Mathews, 453 F.3d 830, 834 (7th Cir.2006) (observing that Shepard, 544 U.S. at 17, 125 S.Ct. 1254, and Taylor, 495 U.S. at 599-600, 110 S.Ct. 2143, "establish that, for state statutes that are ’divisible[,]’ ... a sentencing court may examine [Shepard materials] in order to determine which portion of the state statute the defendant violated”); see also Descamps v. United States, - U.S. -, 133 S.Ct. 2276, 2283, 186 L.Ed.2d 438 (2013) ("Our caselaw explaining the categorical approach and its ’modified’ counterpart all but resolves this case.”); id. at 2285 ("Applied in that way — which is the only way we have ever allowed — the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute.”). Taylor was expressly referenced during Spencer’s sentencing hearing, and Spencer urged the district court to apply the Shepard procedure, albeit not by name but by description, to assess whether Spencer had pled guilty to the "violent or nonviolent aspect of the statute.”

. If application of the career-offender enhancement caused the Guidelines range to exceed the statutory maximum, the statutory maximum of the offense for which the defendant is sentenced would become the Guidelines sentence. U.S.S.G. § 5Gl.l(a).

. To the limited extent that, with respect to a particular crime, the Commentary to the Guidelines requires a conclusion different from the case law construing the phrase "violent felony” under the ACCA, offenses qualifying as "crimes of violence” under the career-offender guideline may not qualify as "violent felonies” under the ACCA. Denson v. United States, 569 Fed.Appx. 710, 712 (11th Cir.2014) (citing Hall, 714 F.3d at 1272 (quoting Stinson v. United States, 508 U.S. 36, 38, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993))). Here, though, no commentary to the career-offender guideline affects the issue before the Court.

. In addition, considering the factual circumstances of a conviction for purposes of deter- . mining whether to apply the career-offender enhancement would result in "a particular crime ... sometimes [being] count[ed] towards enhancement and sometimes not, depending on the facts of the case.” Taylor, 495 U.S. at 601, 110 S.Ct. at 2159 (explaining why courts do not evaluate particular facts of a conviction in determining whether they qualify as predicate felonies under statutory sentencing-enhancement provisions). Moreover, quite apart from the jurisprudential concerns raised by applying different standards, it would be impractical and "potentially] unfair” to require sentencing courts to undertake a factual inquiry into the circumstances of predicate felonies to determine whether the career-offender guideline applies. See Taylor, 495 U.S. at 601-02, 110 S.Ct. at 2159-60 (explaining why courts do not conduct factual inquiries into particular convictions to determine whether they qualify as predicate felonies under statutory sentencing-enhancement provisions). Sentencing courts would face mini-trials on crimes previously adjudicated before different tribunals every time that the court or the government raised enhancement under a guideline.

. No indication exists in the district-court sentencing record that Spencer agreed with this statement during the state-court change-of-plea proceedings, so, on the district-court record, it would be questionable whether the statement even qualified as Shepard information. However, Spencer did attach to his initial appellate brief a copy of the transcript from his change-of-plea hearing in the third-degree felony child abuse case. In that transcript, Spencer stated that he took "no exceptions” to the prosecutor's factual basis as set forth above. Although the transcript is outside the record on appeal, in the interests of completeness, I nonetheless note Spencer’s lack of exception.

. In support of his § 2255 petition, Spencer filed an affidavit from the person with whom he engaged in sexual activity, written by her after she attained the age of majority. In that affidavit, she attested under oath that she had called Spencer, who himself was eighteen years old at the time, and asked him to visit her at her residence. When he arrived, she stated, she “provoked sexual intercourse with Spencer, which was consensual between the both of us.” She further attested that "[a]t all times prior to this night, I misrepresented to Spencer that I was eighteen ... years old. I did not want Spencer to know that I was fourteen ... because I felt my age would scare him off.... Spencer did not abuse me, intimidate me, coerce me, nor sexually assault me. Unfortunately, I coerced him.” While laws criminalizing sexual activity between an adult and a minor, regardless of the adult's alleged lack of knowledge of the minor's age, certainly exist for good reason, the facts as alleged in this affidavit explain how Spencer reasonably viewed himself as not pleading guilty to the physical-injury version of the statute. I do not consider this affidavit in my analysis because it was not part of the Shepard documents. Instead, I note it only as an example of how not every incident of "sexual activity with a minor” would reasonably cause physical injury.

. Although McKay was issued six years after Johnson, we further concluded that the Supreme Court had not so held, either. See McKay, 657 F.3d at 1197 ("Neither the Supreme Court nor this.Court has yet ruled on whether Sawyer’s actual innocence of sentence exception extends to the noncapital sentencing context.”).

. Indeed, requiring Spencer to serve a career-offender sentence based on a conviction for the mental-injury version of the Florida statute is no different from requiring a defendant to serve a career-offender sentence based on a prior conviction for failing to file his taxes. Neither the mental-injury version of the statute nor the tax crime has ever qualified as a "crime of violence” for pur *1177 poses of the career-offender enhancement, and the hypothetical defendant and Spencer are both actually innocent of career-offender status.

. Policy statements are authoritative. See Williams v. United States, 503 U.S. 193, 200-02, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992).

. If the procedural bar to relitigation of an issue raised on direct appeal were considered a form of the law-of-the-case doctrine, see, e.g., Rozier v. United States, 701 F.3d 681, 684 (11th Cir.2012) (in citations for the proposition that "a claim or issue that was decided against a defendant on direct appeal may not be the basis for relief in a § 2255 proceeding,” characterizing some out-of-circuit cases as "[¡Invoking the doctrine of the law of the case” or as otherwise relying on the "law of the case” to bar relitigation in a § 2255 proceeding of the previously raised issue), the well-established exception to that doctrine allowing reconsideration of a "prior decision [that] was clearly erroneous and would result in a manifest injustice,” see Stoufflet, 757 F.3d at 1240, would apply here.

. I recognize that my proposed resolution of this case may not apply to many — if any— other cases and that it leaves for another day the issue of where to draw the line between a sentence that is cognizable under § 2255 and one that is not. But we are looking at Spencer’s case right now, and the law requires that his sentence be vacated. So we should not hesitate to vacate his sentence, merely because, as a practical matter, the rule taken from such a resolution may not have wide application. It is, after all, Spencer's appeal that we are considering.